```
                   UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF RHODE ISLAND
```

_____
                                   )
In re Application of POLYGON       )
GLOBAL PARTNERS LLP for an Order   )
Pursuant to 28 U.S.C. § 1782 to    )
Conduct Discovery for Use in a     )   No. 21-mc-007 WES
Foreign Proceeding,                )
                                   )
              Petitioner.          )
_____)

### MEMORANDUM AND ORDER

WILLIAM E. SMITH, District Judge.

After the Court granted leave for Petitioner Polygon Global Partners LLP ("Polygon") to conduct discovery for use in a foreign proceeding pursuant to 28 U.S.C. § 1782, Respondent Providence Equity Partners L.L.C. ("Providence") filed a Motion to Quash, ECF No. 11. For the reasons that follow, Providence's Motion is DENIED.

I.   BACKGROUND

This dispute stems from the takeover of MasMovil, a Spanish telecommunications company, and its subsequent delisting from the Spanish stock exchange. Takeovers and delistings of publicly traded companies are permitted in Spain under certain circumstances, subject to the approval of the National Securities Market Commissioner ("CNMV"). Murillo/Vélez Decl. ¶ 7, ECF No. 11-8. To challenge a CNMV decision approving a takeover or

delisting, an appellant must file an application of claim in Spanish court. Id. ¶ 15. In response, the agency must provide the administrative file relating to the decision. Id. ¶ 16. If the appellant believes the administrative file to be incomplete, the appellant can file a request for the CNMV to augment the file. Id. ¶ 18. After the augmentation request is resolved, the appellant must file its statement of claim in court within twenty days. Id. ¶ 17-18. The appellant may accompany its statement of claim with additional evidence or with a request for discovery from other parties or non-parties. Id. ¶ 17.

Here, several investment funds, including two managed by Providence UK (a wholly owned subsidiary of Providence), set out to acquire and delist MasMovil. Krnic Decl. ¶ 2, ECF No. 11-7; Murillo/Vélez Decl. ¶ 6. To do so, the funds created a new entity named Lorca. Murillo/Vélez Decl. ¶ 6. In June 2020, Lorca filed for authorization of a voluntary takeover of MasMovil at an offer price of 22.50 euros per share, simultaneously announcing its intent to delist MasMovil. Id. ¶ 8. The CNMV approved the bid. Id. The takeover succeeded, the shareholders approved the delisting, and CNMV authorized MasMovil (by then controlled by Lorca) to delist its shares from the Spanish stock exchange. Id. ¶¶ 8, 9, 11, 12.

Prior to the delisting, Polygon had acquired equity swaps in MasMovil. See Mem. Law Supp. Appl. 2-3 & n.4, ECF No. 1-1. Based

2

on its belief that the share price for the takeover was too low, Polygon has since filed two applications of claim: one challenging the approval of the takeover bid, and the other challenging the approval of the delisting. Murillo/Vélez Decl. ¶¶ 13, 25, 34. After CNMV produced the administrative file in response to the first application of claim, Polygon requested that the CNMV augment the file with many of the documents now sought through § 1782 discovery. See id. ¶ 26. Initially, the Spanish court granted the request to augment the administrative file. Id. ¶ 27. However, the CNMV moved for reconsideration, arguing that the documents were irrelevant. Id. ¶ 28. In a short opinion, the court reversed its decision and denied the records request because the documents were "not a part of the case files" of the CNMV and because Polygon had failed to show why the discovery, which the court described as confidential, was necessary. See English Translation of Jan. 15, 2021 Decision of Spanish National High Court ("Spanish Court Decision") 2 (page 7 of ECF No. 11-10). Polygon subsequently filed its statement of claim based on the un-augmented administrative file. Murillo/Vélez Decl. ¶ 31. Along with its statement of claim, Polygon also requested certain discovery from CNMV, Lorca, and MasMovil. Id. The Spanish court has yet to rule on that request. Id. ¶ 33. In response to Polygon's second application of claim, the CNMV produced the administrative file, but the Spanish court has not yet issued its

3

decision on Polygon's request to augment that file. Id. ¶¶ 34-35, 37.

In the instant proceeding, Polygon seeks from Providence all documents concerning the MasMovil transaction, including documents from MasMovil board meetings, communications between MasMovil bidders, communications with CNMV, documents regarding the valuation of MasMovil, documents concerning the PwC report, documents concerning the BDP report, documents concerning transactions between MasMovil and certain other companies, communications with various banks and consultants, and documents concerning compensation for PwC and Goldman Sachs. See Subpoena, Schedule A, at 7-8, ECF No. 11-4. Polygon also seeks a deposition pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure on various topics relating to the MasMovil transaction. See Subpoena, Schedule B, ECF No. 11-5.

## II. DISCUSSION

The review of an application for discovery pursuant to § 1782 involves a two-part inquiry. In the initial step, the petitioner bears the burden of showing that the application meets four statutory requirements. In re Schlich, 893 F.3d 40, 49 (1st Cir. 2018). First, the person from whom discovery is sought must reside or be found in the district where the application is filed (here, Rhode Island). 28 U.S.C. § 1782(a). Second, the discovery must be "for use in a proceeding" before a "foreign or international

4

tribunal . . . ." Id. Third, the application must be made by an "interested person . . . ." Id. And fourth, the discovery cannot be barred by any "legally applicable privilege." Id.

If those four requirements are met, the Court must determine whether granting discovery would promote the twin aims of the statute: "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 252 (2004) (quotation and citation omitted). In this discretionary inquiry, the Court must consider the following factors: (1) whether the party from whom discovery is sought is a participant in the foreign proceeding, (2) whether the foreign tribunal would be receptive to judicial assistance from the United States, (3) whether the application is an attempt to "circumvent foreign proof-gathering restrictions[,]" and (4) whether the request is "unduly intrusive or burdensome." Id. at 264-65. While each discretionary factor "bear[s] consideration[,]" no factor is dispositive. Id. at 264. Moreover, neither party bears a burden of proof or persuasion with regard to the so-called Intel factors. Schlich, 893 F.3d at 50.

    A.    Statutory Requirements

        i.    Residence in the District

**Parent vs. Subsidiary.** Providence argues that discovery is improper because most of the evidence at issue is held by its

5

foreign subsidiary, Providence UK.  <u>See</u> Mem. Supp. Mot. Quash 13-14, ECF No. 11-1; Krnic Decl. ¶ 3.  The Court disagrees.

Section 1782 contains certain procedural requirements, but all additional procedural issues are governed by the Federal Rules of Civil Procedure.  <u>See</u> 28 U.S.C. § 1782(a).  Therefore, per the usual rule, the subpoena power under § 1782 can reach any document within the subpoena recipient's "possession, custody, or control . . . ."  Fed. R. Civ. P. 45(a)(1)(C).  As the party seeking discovery, Polygon has the burden of making a prima case of control over the documents at issue.  <u>See</u> <u>FM Generator, Inc. v. MTU Onsite Energy Corp.</u>, CV 14-14354-DJC, 2016 WL 8902603, at *3 (D. Mass. Aug. 25, 2016) (citation omitted).

A subpoena recipient has "control" over documents held by another entity if the recipient has the "legal right to obtain the documents requested upon demand."  <u>Addamax Corp. v. Open Software Found., Inc.</u>, 148 F.R.D. 462, 464 (D. Mass. 1993) (quoting <u>Searock v. Stripling</u>, 736 F.2d 650, 653 (11 Cir. 1984)).  Providence states that "Providence UK is an indirect, wholly owned subsidiary of Providence . . . ."  Mem. Supp. Mot. Quash 5.  As described in Providence's recent filings to the Securities and Exchange Commission, the firm has offices in Rhode Island, New York City, and London (the location of Providence UK).  <u>See</u> Form ADV, Item 1.F and § 1.F, ECF No. 1-8.  Moreover, the two funds that are invested in Lorca/MasMovil (Providence VII and Providence VIII)

6

are described as being under "common control" with Providence. See id. § 7.A. Lastly, all emails of Providence UK "are backed up on a server in the United States for United States regulatory purposes." Krnic Decl. ¶ 3. For these reasons, the Court concludes that Providence has the legal right to obtain the documents at issue from Providence UK.

Moreover, even where a subpoena recipient does not have the legal right to obtain the documents, the recipient has "control" over the documents in certain circumstances, including where the recipient "can secure documents of the [related entity] to meet its own business needs and documents helpful for use in litigation . . . ." Addamax, 148 F.R.D. at 465 (quoting Gerling Intern. Ins. Co. v. Comm'r Internal Revenue, 839 F.2d 131, 141 (3d Cir. 1988)). Jonathan Nelson, chairman of Providence, sat on the investment committee that approved the investment in Lorca and MasMovil. See April 26, 2021 Hr'g Tr. 21. Additionally, Polygon asserts (without denial from Providence) that Mr. Nelson signed documents relating to the investment. See Polygon's Mem. of Law in Opp'n to Providence's Mot. to Quash ("Opp'n") 25, ECF No. 12. It strains credulity to think that members of the investment committee that approved the investment could not obtain the underlying documents upon request. Thus, assuming arguendo that Providence does not have the legal right to obtain the documents at issue, the Court concludes that the relationship between

7

Providence and Providence UK is such that Providence has the practical ability to obtain the documents at issue.

**Foreign Location.** Relatedly, Providence argues that the subpoenas should be quashed because § 1782 does not allow discovery of documents held abroad. Mem. Supp. Mot. Quash 14-15. This argument is unavailing. First, the plain language of § 1782 does not prohibit foreign-held discovery. Second, the Federal Rules of Civil Procedure do not bar foreign discovery so long as the evidence is within the possession, custody, or control of the subpoena recipient. See Sergeeva v. Tripleton Intl. Ltd., 834 F.3d 1194, 1200 (11th Cir. 2016) (citing Fed. R. Civ. P. 45). Third, the weight of the case law holds that there is not a per se bar against discovery of evidence located abroad. See In re del Valle Ruiz, 939 F.3d 520, 533 (2d Cir. 2019) (holding that § 1782 may be used to obtain foreign discovery but that location may weigh against the exercise of this discretionary authority); Sergeeva, 834 F.3d at 1200 ("[T]he location of responsive documents and electronically stored information . . . does not establish a per se bar to discovery under § 1782."); see also Kestrel Coal Pty. Ltd. v. Joy Glob., Inc., 362 F.3d 401, 404 (7th Cir. 2004) (declining to rule whether § 1782 has a per se bar against discovery of foreign-held evidence); Four Pillars Enterprises Co. v. Avery Dennison Corp., 308 F.3d 1075, 1080 (9th Cir. 2002) (same). But see Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada,

8

384 F. Supp. 2d 45, 52 (D.D.C. 2005) ("§ 1782 is not properly used to seek documents held outside the United States as a general matter."). Thus, the Court concludes that the first statutory requirement is met.

       ii.  "For Use" in a Foreign Proceeding

Second, discovery sought through § 1782 must be "for use" in a proceeding before a foreign tribunal. The First Circuit has held that "a request for discovery under § 1782 that is plainly irrelevant to the foreign proceeding will fail to meet the statutory 'for use' requirement . . . ." Schlich, 893 F.3d at 52. The bar is not high, though, as "marginally relevant" evidence can meet the statutory requirement. Id. (citing Mees v. Buiter, 793 F.3d 291, 299 n.10 (2d Cir. 2015)).

Providence argues that the discovery requested by Polygon is irrelevant to the Spanish proceedings. Mem. Supp. Mot. Quash 11-13. Specifically, Providence contends that by rejecting Polygon's request to expand the administrative file to include many of the documents sought in the instant proceeding, the Spanish court ruled that those documents were irrelevant. Id. Not quite. While the CNMV did argue that the documents were irrelevant, and while the court did rule in the CNMV's favor, the court did not say that the documents were irrelevant. See Spanish Court Decision 2 (page 7 of ECF No. 11-10); English Translation of State Att'y Brief to Spanish National High Court 2, ECF No. 11-9, at 8. Rather, the

9

court stated that the CNMV was not required to provide the documents because they were not part of the CNMV's case file and because Polygon had failed to meet its burden of demonstrating a need for confidential documents. See Spanish Court Decision 2 (page 7 of ECF No. 11-10). Polygon has also sought to get similar documents via third-party discovery, and the Spanish court has not yet ruled on the CNMV's relevance-based objection to that request. Murillo/Vélez Decl. ¶¶ 31-33. Accordingly, this Court is left without a definitive answer from the Spanish court regarding relevance.

On first blush, the requested documents, which concern the process through which Lorca developed the proposed share price that was approved by the CNMV, appear highly relevant to Polygon's contention that the takeover bid undervalued MasMovil. The Court therefore concludes that Polygon has satisfied the second statutory requirement.

       iii. Interested Person

Third, the party seeking discovery must be an interested person in the foreign proceeding. See 28 U.S.C. § 1782(a). Providence states that Polygon lacks standing to challenge the CNMV's decisions because it held only equity swaps, not shares, in MasMovil, and because it no longer held those swaps on the date that MasMovil was delisted. Mem. Supp. Mot. Quash 3 n.4. However, with no basis for determining the proper standards or remedies

10

available in the Spanish proceeding, it would be futile and inappropriate for this Court to speculate regarding Polygon's standing. See Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1099-100 (2d Cir. 1995). Because Polygon is the applicant/claimant in the foreign proceedings, the Court reaches the obvious conclusion that Polygon is an interested person under § 1782.

      iv. Privilege

Fourth, the discovery cannot be privileged. See 28 U.S.C. § 1782(a). Providence does not identify privilege as a basis for quashing the subpoenas. Nonetheless, the Motion to Quash is denied without prejudice to Providence raising privilege-based objections to specific pieces of discovery through the standard procedures. Any such objections can likely be resolved without the Court's involvement.

Having found that Polygon's application for discovery satisfies the statutory factors, the Court next turns to the discretionary factors from Intel.

B. Discretionary Factors

      i. Whether Providence is a Participant

Where a § 1782 application seeks discovery from a party to the foreign proceeding, discovery is disfavored because the foreign court could order the discovery itself. See In re Schlich, 893 F.3d at 47. Here, Providence is not a party to the Spanish proceedings, which are brought by Polygon against the CNMV.

11

However, Providence represents that Lorca and MasMovil <u>are</u> parties. Mem. Supp. Mot. Quash 19. Providence thus argues that because Lorca and MasMovil are partially owned by Providence funds, Polygon "arguably" could obtain this discovery from Providence as a quasi-party. <u>Id.</u> at 19-20. Polygon takes the opposite view, maintaining that Spanish law provides no mechanism for it to obtain discovery from Providence. <u>See</u> Opp'n 14. (Indeed, Polygon has a pending motion in the Spanish proceedings for discovery from certain entities, but not from Providence. <u>See</u> Murillo/Vélez Decl. ¶¶ 31-32.) This Court is ill-suited to resolve this dispute and thus assumes that Providence is not properly considered a party to the Spanish proceedings. <u>See</u> <u>Euromepa</u>, 51 F.3d at 1099-100.

Relatedly, Providence argues that the first factor weighs against discovery because Lorca and MasMovil would be better sources for the documents. Mem. Supp. Mot. Quash 20. However, this argument depends on the suspect assumption that the documents would be discoverable in the Spanish proceedings. Moreover, the <u>Intel</u> Court focused on the respondent's identity, not the location(s) of the documents. <u>See</u> 542 U.S. at 264.

Providence cites to <u>In re Valitus, Ltd.</u>, CIV 20-MC-91133-FDS, 2020 WL 6395591 (D. Mass. Nov. 2, 2020), for the proposition that a litigant should obtain documents from parties to the foreign proceeding before seeking the same documents from affiliated non-parties via § 1782. <u>See</u> Mem. Supp. Mot. Quash 20. But, in <u>Valitus</u>,

12

the respondent would have needed to obtain the requested discovery from an affiliate that was a party to the foreign proceeding, thus undermining the objective of the first factor. See 2020 WL 6395591, at *6. Here, conversely, there is no contention that compliance with the subpoenas would require Providence to acquire documents from Lorca or MasMovil; rather, Providence may need to get documents from Providence UK, which is not a party to the Spanish proceedings. See In re Bayer AG, 146 F.3d 188, 195–96 (3d Cir. 1998) (holding that § 1782 does not require exhaustion). The Court thus concludes that the first factor weighs in Polygon's favor.[1]

       ii. Receptivity to Judicial Assistance

Providence next argues that the Spanish court would not be receptive to discovery assistance from this Court. See Mem. Supp. Mot. Quash 20-22. However, this argument rests on Providence's position, rejected above, that the Spanish court held the discovery to be irrelevant.

Providence also relies on a document from the CNMV stating that the discovery is irrelevant and that the § 1782 petition is

---

[1] To the extent that the Court's articulation of the first factor is inconsistent with In re OOO Promnefstroy, 2009 WL 3335608, at *5 (S.D.N.Y. Oct. 15, 2009), this Court does not find that decision to be convincing. Moreover, "[t]he Second Circuit . . . abrogated [OOO Promnefstroy] with its decision in In re del Valle Ruiz." In re Top Matrix Holdings Ltd., 18 MISC. 465 (ER), 2020 WL 248716, at *5 n.4 (S.D.N.Y. Jan. 16, 2020).

13

an end run around Spanish civil procedure. See Mem. Supp. Mot. Quash 11-12, (citing CNMV Letter, Ex. 1 to Amsel Decl., ECF No. 11-3). Pointing to In re Microsoft Corp., 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006), Providence argues that where a foreign governmental body expressly opposes § 1782 discovery, the district court ought to heed that request. In Microsoft, though, the stated opposition to § 1782 discovery came from the foreign tribunal in which the discovery was to be used. See 428 F. Supp. 2d at 194 ("[T]his Court has not found[] a single case where a court has granted § 1782 discovery in the face of express objection by the foreign court where the underlying proceeding is pending."). Here, on the other hand, the tribunal is the Spanish National High Court, not the CNMV. Therefore, this Court need not defer to the CNMV.

Without a definitive answer regarding receptivity, the Court lands at the default assumption that the tribunal would be receptive to assistance. See Intel, 542 U.S. at 261-62 ("A foreign tribunal's reluctance to order production of materials present in the United States . . . may signal no resistance to the receipt of evidence gathered pursuant to § 1782(a).").

### iii. Circumvention of Proof-Gathering Restrictions

Under the third discretionary factor, the Court considers "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." Id. at 265. But not all

14

proof-gathering restrictions weigh against discovery. While the Court should generally stay clear of discovery that is prohibited in the foreign jurisdiction, "documents that cannot be obtained in a foreign proceeding because the foreign jurisdiction does not provide a mechanism for such discovery" are fair game. In re Accent Delight Intl. Ltd., 791 Fed. Appx. 247, 251 (2d Cir. 2019) (unpublished) (citing Mees, 793 F.3d at 303 n.20). Indeed, the Supreme Court explicitly held that lack of discoverability in the foreign proceeding does not bar discovery. Intel, 542 U.S. at 261–63.

Providence's effort to portray Polygon's application as a blatant circumvention of Spanish discovery law is unavailing. First, Providence relies on its assertion, rejected above, that the Spanish court ruled that this discovery is irrelevant. See Mem. Supp. Mot. Quash 22-23. Second, Providence argues that, were Polygon to file the instant discovery request in the United Kingdom, the request would be rejected because the subpoenas do not identify the specific documents sought. Id. at 23. This hypothetical scenario has no bearing on the Court's inquiry, especially since the supposed hurdle in the United Kingdom would be procedural. Accordingly, this factor lands in Polygon's column.

####  iv. Undue Burden

Rounding out its comprehensive objections, Providence argues that Polygon's document requests are unduly burdensome. Id. at

15

24-25. However, the Court has already directed the parties to meet and confer in order "to narrow the scope of discovery should Providence Equity Partners LLC's motion to quash be denied[,]" thus addressing Providence's concerns. April 1, 2021 Text Order; see also April 26, 2021 Hr'g Tr. 39-42.

In sum, the discretionary factors all lead to the same conclusion: the discovery request must be granted.

C. Costs

Apart from its merits-based arguments, Providence argues that Polygon should be forced to bear the costs of any document production. Mem. Supp. Mot. Quash 25-26. Once again, the Court must look to the Federal Rules of Civil Procedure to fill in the gaps in § 1782. Rule 45(d)(2)(B)(ii) provides that, where a court orders compliance with a subpoena over an objection, the court's "order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." The Court concludes that, barring unforeseen circumstances, the discovery at issue will not impose significant expense. Thus, Providence's request is denied.

Providence also contends that Polygon should be required to indemnify Providence and Providence UK for any fines imposed for breaches of European privacy laws. See Mem. Supp. Mot. Quash 25-26; see also In re Hansainvest Hanseatische Inv.-GmbH, 364 F. Supp. 3d 243 (S.D.N.Y. 2018) (requiring indemnification). Though it

16

seems doubtful that Providence would be sanctioned for complying with this Order, the Court agrees that it would be inequitable to expose Providence to such liability. Moreover, Polygon did not object to this indemnification request. See Opp'n 28-29. Thus, with regards to documents located in Europe, the Motion to Quash is denied only to the extent that Polygon indemnifies Providence and Providence UK against any resulting fines for breach of European privacy laws. This requirement does not apply to materials currently located in the United States. Lastly, the Court expects that the parties can agree on an appropriate protective order to govern discovery in this matter.

III. CONCLUSION

For the reasons contained herein, Providence's Motion to Quash, ECF No. 11, is DENIED.

IT IS SO ORDERED.

/s/ William E. Smith
William E. Smith
District Judge
Date: May 11, 2021