UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                               )
In re Application of POLYGON    )
GLOBAL PARTNERS LLP for an Order)
Pursuant to 28 U.S.C. § 1782 to )
Conduct Discovery for Use in a  )      No. 21-mc-007 WES
Foreign Proceeding,             )
                               )
          Petitioner.           )
_____)
```

### MEMORANDUM AND ORDER

WILLIAM E. SMITH, District Judge.

Petitioner Polygon Global Partners LLP ("Polygon") seeks an order compelling production of two sets of documents which it claims Respondent Providence Equity Partners L.L.C. ("Providence") has improperly withheld as privileged. Pet'r's Mot. to Compel Docs. Withheld on Privilege Grounds, ECF No. 27 ("Mot. to Compel."). After a hearing on the matter, Providence submitted a Motion for Reconsideration, ECF No. 30, pursuant to a Text Order issued on November 12, 2021. For the reasons that follow, Providence's Motion to Reconsider is DENIED. Polygon's Motion to Compel is GRANTED in part and DENIED in part.

I.   BACKGROUND

This dispute originates in Spain.  After Providence and its partners[1] ("the Consortium") purchased a publicly traded Spanish telecom company, MasMovil, they delisted it from various Spanish stock exchanges.  Mem. and Order on Mot. to Quash 1-2 (Mar. 11, 2021) ("March 11 Order"), ECF No. 17.  Petitioner Polygon held a minority interest in MasMovil at the time of the delisting.  Id. at 2.

Both the Consortium's takeover bid and subsequent delisting of MasMovil were subject to approval by Spain's primary national securities regulator, the National Securities Market Commissioner ("CNMV").  Id. at 1.  In July and October 2020, CNMV gave its blessing to both the takeover bid and the delisting in separate decisions, both of which are subject to review by Spanish courts.  Resp't's Mem. in Opp'n to Mot. to Compel 9, ECF No. 28 ("Opp'n to Mot. to Compel").  Polygon has sought that review, contesting the legality of both decisions under Spanish law and hoping for a higher price on its shares.  March 11 Order 2-3.

To assist its litigation efforts in Spain, Polygon applied to this Court under 28 U.S.C. § 1782 ("§ 1782") seeking discovery from Providence.  It filed a similar application in the Southern

---

[1] The Consortium consists of various investment funds owned by three large equity firms:  Providence Equity Partners, Kohlberg, Kravis, Roberts & Co. LP ("KKR"), and Cinven.  To facilitate the transaction the Consortium created a Spanish company, Lorca.

District of New York seeking discovery from Consortium member KKR. See In re Polygon Glob. Partners LLP, No. 21 MISC. 364 (ER), 2021 WL 2117397 (S.D.N.Y. May 25, 2021) ("Polygon SDNY App.").

Both courts granted the applications, denied motions to quash the relevant subpoenas, and ordered that discovery be produced to Polygon. Polygon SDNY App., 2021 WL 2117397, at *1; March 11 Order 17. Both decisions were rendered with out prejudice to claims of privilege over specific documents. Polygon SDNY App., 2021 WL 2117397, at *10; March 11 Order 11. Those claims are now ripe, as Polygon challenges Providence's assertion of privilege over two sets of documents.

First, Providence withheld documents it characterizes "as privileged because [they] reflected communications between the members of the [. . . C]onsortium and their joint legal advisors regarding the request for or provision of legal advice." Opp'n To Mot. to Compel 1. Providence contends these documents are protected whether the Court analyzes the question under the privilege law of Spain, England,[2] or the United States. Id. at 21-31. Second, Providence claims that confidential documents it sent to the CNMV while pursuing regulatory approval (and emails describing the contents of these documents) are privileged

---

[2] Consortium member Cinven is based in the United Kingdom, and the Consortium's organizing agreement specifies that it is to be governed by English law. See Opp'n to Mot. To Compel 5.

pursuant to Article 248 of Spain's Royal Legislative Decree 4/2015 ("Art. 248").  Id. at 32-35.

After an initial round of briefing, the Court heard arguments from the parties.  Noting a series of decisions by Spanish courts which cast doubt on their receptivity to foreign assistance, the Court ordered additional briefing on three questions:  (1) whether intervening developments in the Spanish proceedings constituted grounds for reconsideration of its prior order; (2) what should happen to documents already produced if the Court reconsidered its decision on Providence's Motion to Quash; and (3) the process by which the Court should determine the contents and contours of Spanish law, if it did not grant the Motion to Reconsider.  See Nov. 12, 2021 Text Order.

Having received this second round of briefing, Polygon's Motion to Compel, ECF No. 27, and Providence's Motion to Reconsider, ECF No. 30, are both ripe for determination.

II.  DISCUSSION

    A. Motion for Reconsideration

Shortly after this Court ordered additional briefing, the relevant Spanish court answered the question of its receptivity to foreign assistance definitively.  See Mot. for Reconsideration, Amsel Decl. Ex. 8, ECF No. 30-10 ("Spanish High Court Order").  It admitted into evidence documents obtained from Providence here and from KKR in New York, and postponed proceedings so as to grant the

4

parties additional time to make use of § 1782 discovery.  Id.; See also Mem. in Supp. Mot. for Reconsideration 9-10, ECF No. 30-1.

After this development, it is clear that at least some documents are "for use" in Spain, and that Spanish courts are receptive to some measure of assistance.  Where the foreign court has already admitted documents, describing them as "directly relevant to the subject matter of the dispute," any lingering questions over receptivity cannot establish adequate grounds for a wholesale reconsideration of this Court's prior order.  See Spanish High Court Order 4.  After all, "[t]he granting of a motion for reconsideration is an extraordinary remedy which should be used sparingly." Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (internal quotation and citation omitted).  Given this turn of events in Spain, Providence's Motion to Reconsider must be DENIED.

B. Claims of Privilege in the § 1782 Context

A court is prohibited from ordering discovery under § 1782 "in violation of any legally applicable privilege."  28 U.S.C. § 1782.  It is undisputed that applicable privileges can include those recognized in foreign law.  When there is a choice-of-law dispute, "the 'touch base' test is the proper choice-of-law test for purposes of determining which privileges are 'legally applicable' in the § 1782 context." Mangouras v. Squire Patton Boggs, 980 F.3d 88, 98-99 (2d Cir. 2020). "Under the touch base

test, a court applies the law of the country that has the 'predominant' or 'the most direct and compelling interest' in whether . . . communications should remain confidential, unless that foreign law is contrary to the public policy of this forum." Id. (quoting Astra Aktiebolag v. Andrx Pharm., Inc., 208 F.R.D. 92, 98 (S.D.N.Y. 2002)) (internal quotation marks omitted).

When a party claims a privilege under foreign law in a § 1782 proceeding, the burden is on that party to prove that the privilege both exists and applies.[3]   See In re Naranjo, 768 F.3d 332, 348

---

[3] The fact that courts in the the First Circuit routinely describe the question of privilege as § 1782's fourth statutory requirement does not shift this burden, despite the First Circuit's clear statement that the § 1782 applicant generally bears a burden for statutory factors.  See In re Schlich, 893 F.3d 40, 49 (1st Cir. 2018)("[T]he party seeking discovery under § 1782, ha[s] the burden of establishing that all the statutory requirements were met in order for the court to even consider exercising its discretion to grant the requested relief."); In re Pilatus Bank PLC, No. CV 20-MC-94-JD, 2021 WL 1890752, at *10 (D.N.H. May 11, 2021) (rejecting argument that Schlich altered burden for question of privilege).  While the Court noted that courts in other circuits routinely count only three statutory requirements and consider privilege separately, the First Circuit did not address the implications of the distinction, as they were unbriefed and not essential to the case.  See In re Schlich, 893 F.3d 40, 46 n.6 (1st Cir. 2018).  This perfectly understandable dodge of an unbriefed issue is not reason to believe that the First Circuit was departing from the well-established general rule that the burden to prove a privilege applies rests on the party withholding documents as privileged.  See In re Grand Jury Subpoena (Mr. S.), 662 F.3d 65, 69 (1st Cir. 2011) (party asserting attorney-client generally has burden to show documents are privileged).  This is especially true given the manifest practical difficulties attendant to an applicant being required to somehow show that documents it has not seen are not subject to any possibly applicable privilege.

(4th Cir. 2014) (citation omitted); Chevron Corp. v. Berlinger, 629 F.3d 297, 309 (2d Cir. 2011); In re Santa Fe Int'l Corp., 272 F.3d 705, 710 (5th Cir. 2001); In re Pilatus Bank PLC, No. CV 20-MC-94-JD, 2021 WL 1890752, at *10 (D.N.H. May 11, 2021); In re Veiga, 746 F. Supp. 2d at 33 (citing Fed. Trade Comm'n v. TRW, Inc., 628 F.2d 207, 213 (D.C.Cir.1980)).  The party asserting the foreign privilege must establish it with "reasonable certainty." In re Veiga, 746 F. Supp. 2d at 33.  After all, unless a court orders otherwise, a § 1782 proceeding is governed by the Federal Rules of Civil Procedure, which generally place a burden to establish a privilege applies on the party seeking to withhold discovery.  F.D.I.C. V. Ogden Corp., 202 F.3d 454, 460 (1st Cir. 2000) ("In a discovery dispute, the burden to establish an applicable privilege rests with the party resisting discovery"); In re Pilatus Bank PLC, 2021 WL 1890752, at *10 (burden on party claiming privilege in § 1782 context); See also 28 U.S.C. § 1782 ("To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure").

This rule may have special force in the context of a § 1782 application, where judges are frequently cautioned against making "speculative forays into legal territories unfamiliar to federal judges."  In re Veiga, 746 F. Supp. at 33 (quoting Ecuadorian

Plaintiffs v. Chevron Corp., 619 F.3d 373, 378 (5th Cir. 2010));
see also In re Application for an Ord. Permitting
Metallgesellschaft AG to take Discovery, 121 F.3d 77, 80 (2d Cir.
1997) ("Such a foray [into uncertain German privilege law] would
result in an unduly expensive and time-consuming fight about
foreign law" (citation and quotation omitted)).

   C. Intra-consortium Communications

      1. Choice of Law

    A court should ordinarily utilize the "touch-base" test to
determine which country's law of privilege applies in the § 1782
context. See Mangouras, 980 F.3d at 98. Here, however, the Court
need not conduct a definitive choice-of-law analysis for intra-
consortium communications involving the provision of legal advice
for two independent reasons. First, it appears likely that
Providence is correct in its assertion that the U.S. attorney-
client privilege is more narrow than its English and Spanish
analogues. See Mot. to Compel 19; Declaration of Beltran et al.
¶¶ 69-83, ECF No. 28-13; see also Pablo Berenguer & María Fuentes,
Legal privilege, confidentiality and professional secrecy Q&A:
Spain, Practical Law (Update June 2021), available at Westlaw
identifier w-015-7266. Because the Court concludes that the U.S.
attorney-client privilege protects these documents from
disclosure, it assumes without deciding that they would also be
shielded under the more protective foreign privileges of English

8

and Spanish Law.  See Anwar v. Fairfield Greenwich, Ltd., 982 F.
Supp. 2d 260, 263-64 (S.D.N.Y. 2013) (definitive choice-of-law
analysis not required when result would be the same under all
potentially applicable laws).

Second, to the extent that the scope of Spanish professional
secrecy remains contested, the Court finds this is also a reason
to apply the law of the forum.  Under Rule 44.1 of the Federal
Rules of Civil Procedure, the party invoking foreign law bears
"the burden of adequately proving foreign law [so as] to enable
the court to apply it in a particular case."  Bel-Ray Co. v.
Chemrite (Pty) Ltd., 181 F.3d 435, 440 (3d Cir. 1999).  "Where
parties fail to satisfy [that] burden, the court will ordinarily
apply the forum's law."  Id. at 441; see also In re Petition of
the Republic of Turkey for an Ord. Directing Discovery From Hamit
cicek Pursuant to 28 U.S.C. § 1782, No. CV1920107ESSCM, 2020 WL
4035499, at *7 (D.N.J. July 17, 2020)(resorting to federal law
when party failed to establish scope of right against self-
incrimination under Turkish Constitution); In re Tinsel Grp., S.A.
for An Order Directing Discovery in Aid of Foreign Proceeding
Pursuant to 28 U.S.C. Sec. 1782, No. 13-2836, 2014 WL 243410, at
*2 (S.D. Tex. Jan. 22, 2014) (turning to federal common law where
the respondents did not "clearly and definitively establish[ ]
that disclosure of documents shared among themselves or their
attorneys would violate Dutch privilege law").

In assessing the evidence of foreign law here, the Court agrees with the district court in New York, which found that the parties offered "conflicting interpretations of Spanish law — disputing not only the scope and application of Spanish law on a series of issues, but also its plain meaning — and have provided a number of declarations from a range of purported legal experts on Spanish law, many of whom offer inconsistent analyses of Spanish laws and doctrines." Opinion and Order 13, In re Polygon Glob. Partners LLP, No. 21 MISC. 364 (ER) (S.D.N.Y. Oct. 29, 2021). Therefore, given the Court's conclusion that Spanish privilege law is broader than U.S. attorney-client privilege, or at least that Providence has failed to establish to a reasonable certainty otherwise, it is appropriate to apply the law of the forum and analyze the case under U.S. privilege doctrine.[4]

2. Attorney-client Privilege

The Court turns then to the U.S. law of attorney-client privilege. The doctrine is well-established, and its dimensions are "reasonably well honed." In re Keeper of Recs. (Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16, 22 (1st Cir. 2003) ("XYZ Corp."). It "protects only those communications that are

_____

[4] This Court's conclusions about what follows when the parties' account of Spanish law is indeterminate differs from the conclusion reached by the Southern District of New York. See Opinion and Order 13, In re Polygon Glob. Partners LLP, No. 21 MISC. 364 (ER) (S.D.N.Y. Oct. 29, 2021).

confidential and are made for the purpose of seeking or receiving legal advice." Id. "That protection ceases, or is often said to be 'waived,' when otherwise privileged communications are disclosed to a third party." Blattman v. Scaramellino, 891 F.3d 1, 4 (1st Cir. 2018) (quoting Lluberes v. Uncommon Prods., LLC, 663 F.3d 6, 24 (1st Cir. 2011)).

There is an exception to the waiver rule, however, when joint clients of the same lawyer share a common legal interest. Ogden Corp., 202 F.3d at 461 ("[W]hen a lawyer represents multiple clients having a common interest, communications between the lawyer and any one (or more) of the clients are privileged as to outsiders but not *inter sese*.") (citing Eureka Inv. Corp. v. Chicago Title Ins. Co., 743 F.2d 932, 936-38 (D.C.Cir.1984) and 8 John Henry Wigmore, Wigmore on Evidence § 2312 at 603-09 (McNaughton rev. ed. 1961)). Under those circumstances, joint clients are not considered third parties whose presence destroys the confidentiality necessary to the privilege. For the documents at issue here, the Court must determine: 1) whether the consortium members were joint clients of each law firm; and 2) whether they shared a common legal interest.

In considering whether parties are "joint clients," for the purposes of the exception, "courts may consider multiple factors, including but not limited to matters such as payment arrangements, allocation of decision making roles, requests for advice,

11

attendance at meetings, frequency and content of correspondence, and the like." Ogden Corp., 202 F.3d at 461. Polygon argues that each Consortium member engaged separate counsel. It points to a disclosure it received in discovery which lists various consortium members along with a corresponding law firm. See Mot. to Compel 20. Providence contends that Consortium members were joint clients of each other's law firms by express agreement. Opp'n to Mot. to Compel. 20-21. It points to language in the Consortium's organizing document which states that all eight relevant law firms[5] "shall be deemed to be Consortium Advisors for the purposes of this Agreement . . . and shall be engaged for the benefit of all Parties." Id. at 6. The document further provides for joint decision making about not only the primary transaction, but also decisions about "engaging joint legal . . . advisors (the Consortium Advisors), as well as the scope of work and fees for each Consortium Advisor." Id. Where each consortium member exercised some measure of control over the scope of work and payment of each law firm acting for its benefit, the Court agrees with Providence that the Consortium members were joint clients for the purpose of asserting the privilege.

Next, the parties dispute whether the withheld communications pertained to a common legal interest. Mot. to Compel 21-23; Opp'n

---

[5] These firms were listed in a schedule to the agreement which listed various "Consortium Advisors."

to Mot. to Compel 28-31.   Polygon relies on XYZ Corp. for the
proposition that "co-venturers bent on ironing out wrinkles and
reaching a joint business decision" do not share a common legal
interest."   348 F.3d at 25.   While not all transactions and
business decisions necessitate teams of lawyers, sometimes
business and legal advice is inextricably intertwined.   Here, the
Consortium needed to create and structure corporations in England
and Spain, achieve regulatory and anti-trust compliance and
approval for the takeover of a publicly traded company in a highly
regulated industry, achieve regulatory compliance for that
entity's delisting, and defend those regulatory decisions from
potential, perhaps highly foreseeable litigation.   These
constitute legal interests shared by the Consortium members and
within the scope of their joint representation.   See Schaeffler v.
United States, 806 F.3d 34, 41 (2d Cir. 2015) (consortium of banks
and auto-manufacturer shared common legal interest in tax
restructuring in light of likely "encounter with IRS").   The Court
therefore concludes that any communications amongst Consortium
members which pertain to these commonly held legal interests are
protected by attorney-client privilege.   Communications which
pertain to pure business advice, even if originating with or
involving a lawyer, however, are not privileged.   Consistent with
this determination, Polygon's Motion to Compel is DENIED;
Providence is directed to review its privilege log and produce any

documents which do not pertain directly to the common legal interests identified above.

   D.  Privilege under Art. 248

   Finally, Providence asserts that certain documents it submitted to the CNMV are privileged pursuant to Art. 248 of Spain's Royal Legislative Decree 4/2015. Opp'n To Mot. to Compel 32. The parties agree that Art. 248 requires the CNMV keep secret certain documents it receives in confidence in course of exercising its regulatory functions. The parties disagree about whether the statue creates an evidentiary shield against discovery. Polygon argues that the statute's plain language and decisions of various Spanish courts make clear it does not create an evidentiary privilege for the party that submitted the information. See Mot. to Compel. 7. Specifically, Polygon points to provisions of the statute that allow for disclosure in civil suits, id. at 13, and which indicate that the CNMV's confidentiality obligations are "lifted as soon as the interested parties make public the facts to which it refers," id. at 8. Providence, on the other hand, relies on declarations by various legal experts and points to guidance from the CNMV itself directing it to not disclose the documents in question. See Opp'n to Mot. to Compel 32-34.

   While the Court is inclined to say that Polygon has the better of the argument, it ultimately does not need to decide the question. For as noted, "[a]lthough the protections afforded by

14

§ 1782(a) may extend to privileges recognized by foreign law, consonant with courts' reticence to delve into complex questions of foreign law, parties are generally required to provide clear and authoritative proof[6] that a foreign tribunal would reject evidence pursuant to a foreign privilege before the court will invoke the privilege to bar discovery." In re Veiga, 746 F. Supp. at 33; see also Ecuadorian Plaintiffs v. Chevron Corp., 619 F.3d at 378 ("In our view, however, to avoid speculative forays into legal territories unfamiliar to federal judges, parties must provide authoritative proof that foreign tribunal would reject evidence because of a violation of an alleged foreign privilege." (cleaned up); In re Application for an Ord. Permitting Metallgesellschaft AG to take Discovery, 121 F.3d 77, 80 (2d Cir. 1997) ("[A]bsent authoritative proof that a foreign tribunal would reject the evidence obtained with the aid of section 1782—in this instance presumably because of a violation of the alleged privilege—a district court should not refrain from granting the assistance afforded under the Act based simply on allegations to that effect."(citations and quotations omitted)).

---

[6] While the First Circuit rejected an "authoritative proof" requirement under the second Intel factor, see In re Schlich, 893 F.3d at 49-51, the Court has found no case in which it rejected this reasoning in the context of a claim of privilege asserted after a § 1782 petition has been granted.

Courts must weigh foreign privilege disputes carefully. Clearly, the mere fact that a foreign privilege is subject to some dispute by the party seeking discovery should not be enough to eviscerate a potentially applicable privilege. But as the District Court in New York concluded, resolving the dispute here would require the case to devolve into a "battle-by-affidavit of international legal experts," which the district courts have consistently been directed to avoid. See In re Polygon Glob. Partners LLP, No. 21 MISC. 364 (ER) (S.D.N.Y. Oct. 29, 2021) (quoting In re Application of Euromepa, 51 F.3d at 1099).

For this reason, the Court concludes that Providence has not met its burden to show that Art. 248 protects the documents withheld. Despite the position of the CNMV, this decision does not offend principles of international comity. See In re Application of Euromepa, 51 F.3d at 1101 (noting the liberal discovery policies of § 1782 do not offend foreign sovereignty, because foreign courts retain ability to enjoin litigants before them and exclude evidence). With respect to documents withheld pursuant to Art. 248, Polygon's Motion to Compel is GRANTED. IT IS SO ORDERED.

_WESmith_

William E. Smith
District Judge
Date: January 12, 2022

16